IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**6810 SOUTH HAZEL STREET LLC**                                                              **PLAINTIFF**

v.                                         Case No. 5:19-cv-00322-LPR

**JEFFERSON HOSPITAL ASSOCIATION INC.;**                                      **DEFENDANTS**
**JEFFERSON COUNTY, ARKANSAS**

**ORDER**

Pending before the Court are cross-motions for summary judgment in a relatively straight-forward case. However, the Court is precluded from reaching the merits question for two independent reasons. The Court lacks subject matter jurisdiction, and the case is not ripe. Accordingly, the Court denies Plaintiff's Motion for Summary Judgment, grants Defendants' Motion for Summary Judgment to the extent that Motion was based on subject matter jurisdiction and ripeness concerns, and dismisses the case without prejudice.

**Background[1]**

Plaintiff 6810 South Hazel Street LLC ("South Hazel") is a Delaware company that now owns the property that is the focus of this case. (Doc. 12 ¶ 1; Doc. 20 ¶ 1). In November of 2017, South Hazel purchased the property from the Davis Nursing Association by warranty deed in lieu of foreclosure. (Doc. 20 ¶ 5). Ten years earlier, in 2007, the land had been conveyed by warranty deed to the Davis Nursing Association by Defendant Jefferson Hospital Association ("JHA"). (Doc. 20 ¶ 2).[2]

---

[1] The parties do not dispute any facts in this case.

[2] Jefferson County, Arkansas is a party in this case because, under the original deed, if the property at issue reverts to JHA, then JHA must convey it to Jefferson County. (Doc. 12 ¶ 12).

The 2007 warranty deed contained several covenants. (Ex. A to Doc. 10). The deed also included the possibility of reverter to JHA in case of default or breach. (*Id.*). In 2012, the Davis Nursing Association and JHA amended the deed. (Ex. B to Doc. 10). It is the effect of this amendment that the parties dispute. South Hazel says that the amendment removed some of the specific covenants *and* the possibility of reverter. (Doc. 9 at 5-6). JHA agrees that the amendment removed some of the specific covenants. (Doc. 21 at 5-9). Indeed, JHA even agrees with South Hazel as to which specific covenants were removed. But JHA does not agree that the amended deed removed the possibility of reverter.

Here's the rub. Both parties agree that the amended deed still requires the property owner to "use the property and all improvement and facilities located thereon exclusively for providing non-acute long-term care and related non-acute long-term geriatric services, and not directly or indirectly for any other purpose . . . ." (Doc. 20 ¶¶ 3-4). Under South Hazel's interpretation of the amendment to the deed, that contractual provision could only be enforced by way of an injunction or some other type of court intervention. Under JHA's interpretation of the amendment to the deed, a violation of the foregoing contractual provision could automatically lead to reversion of the property to JHA—if the violation was not timely cured, and if JHA elected to apply this enforcement mechanism.

## Discussion

The Court cannot reach the merits question presented by the parties. The Court lacks subject matter jurisdiction, and the case is not ripe.

### A.   Subject Matter Jurisdiction

A court sitting in diversity has subject matter jurisdiction when the parties are diverse, and the value of the dispute exceeds $75,000. 28 U.S.C. § 1332(a)(1). A plaintiff's complaint only

needs to allege the amount in controversy in good faith. *Am. Family Mut. Ins. Co. v. Vein Centers for Excellence, Inc*., 912 F.3d 1076, 1080 (8th Cir. 2019). If the defendant challenges that allegation, "then the plaintiff must establish jurisdiction by a preponderance of the evidence." *Id.* (internal quotation omitted). Even in this circumstance, the burden on a plaintiff is fairly low. A plaintiff must show only that "the amount in controversy [does] not appear to a legal certainty to be $75,000 or less." *Id.* at 1081. But the plaintiff must make this showing by a preponderance of the evidence. *Cf. Kopp v. Kopp,* 280 F.3d 883, 885 (8th Cir. 2002) ("Confusion may arise because the relevant jurisdictional fact, that is, the issue that must be proved by the preponderance of evidence, is easily misidentified. The jurisdictional fact in this case is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are[.]").

The Eighth Circuit has held that "in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue." *Usery v. Anadarko Petroleum Corp*., 606 F.3d 1017, 1018 (8th Cir. 2010). This amount is not determined by how the plaintiff subjectively values the right, or even by the plaintiff's "good-faith estimate of its objective value." *Id.* at 1019. Instead, "[t]he question is the actual value of the object of the suit." *Id.* The Eighth Circuit instructs that "a district court must determine what the property interest at issue is worth in the marketplace, which is a matter of objective fact." *Id.* In this case, the property interest at issue is the possibility of reverter. The amount in controversy would therefore be the delta between the value of the property without the possibility of reverter and the property with the possibility of reverter.[3]

---

[3] In its summary judgment briefing, South Hazel argued that the amount in controversy was the value of the entire property as opposed to the value of the absence of a possibility of reverter. (Doc. 26 at 5). If that was true, there would be subject matter jurisdiction. There is evidence that the value of the property as a whole is between $11,000,000 and $12,300,000. Even if that was number is well off the mark, the property in its entirety is clearly

In its summary judgment papers, JHA argued that the possibility of reverter in this case "does not have an ascertainable value of $75,000." (Doc. 21 at 5). There is support for this proposition. "Generally, a possibility of reverter has no ascertainable value when the event upon which the possessory estate in fee simple defeasible will end is not likely to occur in the near future." 28 Am. Jur. 2d *Estates* § 189 (2020). *See also Leeco Gas & Oil Co. v. Nueces Cty.,* 736 S.W.2d 629, 631-32 (Tex. 1987) (citing the Restatement of Property for the same principle). As discussed below, *see infra* at 6, 8-9, in our case the event that would trigger reverter is not likely to occur in the near future. So, under the general principle, if there was any ascertainable value in the possibility of reverter in this case, the value would likely be nothing more than nominal. Still, it must be acknowledged that there are potential exceptions to what seems to be the general no-ascertainable-value or nominal-value rule. *See State by Mondale v. Indep. Sch. Dist. No. 31,* 266 Minn. 85, 95-96, 123 N.W.2d 121, 129 (1963); *see also Leeco Gas & Oil Co.*, 736 S.W.2d at 631-32.

The Court directed South Hazel to submit an affidavit from a competent expert to provide the objective market value of the property both with and without the possibility of reverter, and a brief discussing the amount in controversy. (Doc. 31). The Court also invited, but did not require, the Defendants to submit the same. (*Id.*). South Hazel provided an affidavit and a Broker's Opinion of Value ("Opinion") from Daniel Morris, a real estate broker. (Ex. 1 to Doc. 34). The Opinion notes that "[t]his valuation analysis or broker's opinion of value is not an appraisal and

---

worth more than $75,000. In response to the Court ordering supplemental filings on the question of subject matter jurisdiction, it appears that South Hazel has abandoned its original argument and recognized that the amount in controversy is the delta between the value of the property without the possibility of reverter and the value of the property with the possibility of reverter. (Doc. 38 at 2). In any event, South Hazel's original position was incorrect. If South Hazel lost this case on the merits, it still would own the property in question. If South Hazel won this case on the merits, it still would be limited by the use restriction that both parties agree survived the amendment to the deed. The merits question in this case is focused squarely on whether or not there is still a possibility of reverter; it is not about some broader question of property ownership.

4

has not been performed in accordance with the Uniform Standards of Professional Appraisers Practice." (*Id.* at 5). The Opinion further notes that "[n]either you, nor any third parties, may rely on this analysis for any tax purposes, estate work, *litigation*, lending or any other matter other than your direct use in connection with a contemplated transaction." (*Id.*) (emphasis added).

In his Opinion, Mr. Morris indicated that the property would be worth $12,300,00 if the property has "clean and marketable title for a new owner to acquire fee simple interest in the asset." (*Id.* at 9). Specifically, he noted: "[i]f taken to market today for sale, we would recommend marketing [the property] without a price tag and receiving bids. It is always our goal to achieve the highest price possible, but we would anticipate that the [property] would trade for approximately $12,300,000." (*Id.*). Potentially important to the question of diversity jurisdiction, Mr. Morris opined that "without clean title the [property] would sell for approximately $11,000,000." (*Id.*). He explained:

> The pricing referenced herein is contingent on the facility having clean and marketable title for a new owner to acquire fee simple interest in the asset. It is our understanding at the present time this would not be the case. Should this not change this will push the value down as any prospective buyers will perceive this as a large risk. This would take away a number of potential buyers from the deal completely. Interested buyers would adjust for this risk through pricing. It is hard to pinpoint exactly how much this would devalue [the property]. The range is highly dependent on what kind of increased CAP rate investors would place on the in-place NOI without clean marketable title. Our estimation is that investors would likely demand an above market CAP rate to adjust for this acquisition risk in the range of 14.0% to 15.0%. It would be our expectation that without clean title the [property] would sell for approximately $11,000,000.

(*Id.*). Neither Defendant submitted an expert affidavit of their own. Instead, JHA filed a motion to strike Mr. Morris's affidavit and the accompanying Opinion.

5

In its Motion to Strike, JHA argued that Mr. Morris failed to address the question posed by the court—namely, what was the value difference of the property with and without the possibility of reverter. (Docs. 35, 36). JHA read Mr. Morris's Opinion to value the property at $12,300,000 only if it was free and clear of all encumbrances whatsoever. (Doc. 36 at 1). But, even under South Hazel's interpretation of the amendment to the warranty deed, the amended deed would restrict the use of the property to "providing non-acute long-term care and related non-acute long-term geriatric services." (Doc. 9 at 2, 5). JHA's point was that, to properly isolate the value of the presence or absence of the possibility of reverter, Mr. Morris would have needed to determine what the value of the property would be absent the possibility of reverter but with the remaining covenanted use restriction in place.

South Hazel responded by providing a second affidavit from Mr. Morris. (Ex. 1 to Doc. 38). The second affidavit attached the same Opinion as his first affidavit. Taken in the light most favorable to South Hazel, Mr. Morris's second affidavit clarified his first affidavit. The second affidavit stated in relevant part:

- The existence of a possibility of reverter affects the value of the [property]. Based on my knowledge and experience, I estimate the value of such a restriction [to be] approximately $1.3 million. In other words, the presence of a possibility of reverter lowers the value of the property by approximately $1.3 million. (Ex. 1 to Doc. 38 ¶ 7).

- My Broker's Opinion of Value attached to my previous affidavit assumed that the property would be purchased by a buyer planning to continue to operate the facility as a non-acute long-term care facility. Thus, any remaining deed restrictions would not affect my previous opinion. (Ex. 1 to Doc. 38 ¶ 8).

Mr. Morris did not provide any further information about how he reached the opinion that the possibility of reverter was worth $1.3 million.

The Court is not persuaded at all by Mr. Morris's Opinion. Indeed, beyond just being unpersuasive, Mr. Morris's Opinion is really no evidence of the critical value delta at all. First, it

6

is somewhat difficult to accept Mr. Morris's claim in the second affidavit that his Opinion regarding the $12,000,000 valuation assumed the property would be purchased by a buyer planning to continue to operate the facility as a long-term care facility. He didn't say that anywhere in his first affidavit or in the Opinion itself. Second, even indulging South Hazel's position that the second affidavit was a "clarification" of, and not a "change" in, Mr. Morris's original Opinion, there is still a serious problem. Mr. Morris appears to believe that the pool of buyers is limited to buyers planning to continue to operate the facility as a non-acute long-term care facility. Indeed, he says his $12,000,000 valuation assumed this. If that is the case, then why would the possibility of reverter be an issue at all to the buyer? If the new buyer is going to operate the facility consistent with the deed covenant, then reverter could never occur.

Perhaps the hypothetical new buyer would be worried that, maybe, sometime in the future, it would need flexibility to use the property for some other endeavor. But if that were the case, it would stand to reason that both the covenanted use restriction and the possibility of reverter would affect the value of the property in identical or near-identical ways. So, in that circumstance, Mr. Morris's $12,000,000 valuation would be off because it didn't take account of the covenanted use restriction. If the $12,000,000 valuation is off, then it cannot be used to establish the right value delta.

Perhaps the possibility of reverter could deflate the value of a sale even to a buyer who intends to comply with the deed covenant because the buyer would still have to take account of potential resale value down the line. While Mr. Morris doesn't explicitly say this in his Opinion, South Hazel's counsel made this point at oral argument. But what has been left completely unexplained is why the possibility of reverter would deflate resale value down the line any more than the covenanted use restriction in the deed itself. The covenanted use restriction—which could

potentially be enforced by injunction—would seem to limit the down-the-line pool of buyers whether or not the possibility of reverter came along with it. Mr. Morris does not provide any explanation, let alone a reasonably logical one, to justify his conclusory value delta.

The Court acknowledges that there is a difference between a property owner being forced to use its property in a particular way (*e.g.* an injunction to enforce a restrictive covenant) and the potential of a property owner to lose the property entirely (*e.g.,* the possibility of reverter). The potential of losing the property is obviously worse. However, on this record, South Hazel has not shown by a preponderance of the evidence that the value of the absence of the possibility of reverter—properly isolated and holding everything else equal—could possibly be more than $75,000. Moreover, it has provided no caselaw—nor has the Court found any—where there was an ascertainable and non-nominal value assigned to the possibility of reverter in circumstances similar to this case. Accordingly, the Court does not have diversity jurisdiction.

### B. Ripeness

This case is not ripe for adjudication. Article III limits courts' ability to adjudicate cases to those that are actual "[c]ases" and "[c]ontroversies." U.S. CONST. art. III. § 2. "The ripeness doctrine applies to declaratory judgment actions." *Pub. Water Supply Dist. No. 8 of Clay Cty., Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 932 (8th Cir. 2005) (citing *Pub. Water Supply Dist. No. 10 of Cass Cty., Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2003). A court may sustain a declaratory judgment before injury takes place. *Id.* However, "the plaintiff must face an injury that is certainly impending." *Id.* (internal quotation omitted). "Whether the factual basis of a declaratory judgment action is hypothetical—or more aptly, too hypothetical—for purposes of the ripeness doctrine (and concomitantly Article III) is a question of degree." *Id.*

There's nothing to suggest that South Hazel is about to use the property in a way that violates the deed. South Hazel did not allege in its operative Complaint that it intends to use the property in a way that would violate the amended deed's covenant and thus raise the specter of reverter. And South Hazel did not submit any facts to the Court to suggest that it intends to use the property in a way that would violate the amended deed's covenant and thus raise the specter of reverter. Indeed, at oral argument, South Hazel's counsel represented that this was not the case.

In the Court's view, South Hazel's best argument for ripeness is the potential effect of the possibility of reverter on the sale value of the property. In its summary judgment briefing, South Hazel noted that "the controversy of the language in the deeds will have a present effect on 6810 if it were to sell the property." (Doc. 26 at 4). But South Hazel faces a problem here too. South Hazel did not allege in its operative Complaint that it had placed the property on the market. It did not allege that it was about to place the property on the market. And it did not present any facts to the Court to suggest either of the foregoing was true. At oral argument, South Hazel's counsel represented that South Hazel is a business that (essentially) flips properties. But that does not mean South Hazel is currently intending to put this specific property on the market (or otherwise receive bids) in the immediate future. Without even an allegation claiming this, the dispute is simply too abstract and hypothetical at this point in time.

South Hazel likens this declaratory judgment action to a quiet title action. The Court assumes South Hazel is arguing that the case is ripe simply because (a) South Hazel owns the property and (b) there is a dispute as to whether South Hazel's ownership is subject to the possibility of reverter. On this view, even if South Hazel affirmatively said that it will never violate the use restriction and that it has no interest in ever selling the property, this case would still be ripe for adjudication. The Court does not agree with this view. Declaratory judgment actions are

9

not somehow insulated from ripeness analysis simply because they involve property.  As the Eighth Circuit has noted, ripeness analysis involves questions of degree.  *Pub. Water Supply Dist. No. 8 of Clay Cty., Mo.*, 401 F.3d at 932.  That many quiet title actions—or even most quiet title actions—are ripe for adjudication does not mean this dispute about the possibility of reverter is ripe on the specific record before us.  It is not.

### C.    Leave to Amend and Supplementation of the Record

At oral argument, the Court indicated its tentative conclusion as to the lack of subject matter jurisdiction and ripeness on the record presented.  The Court indicated it was thus inclined to dismiss the case without prejudice.  But the Court asked for the parties' positions as to whether South Hazel should be given an opportunity to amend its Complaint and supplement the record regarding subject matter jurisdiction and ripeness.  South Hazel said yes.  JHA said no.

The Court is aware that leave to amend should be freely granted.  FED. R. CIV. P. 15(a); *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005).  But there are strong reasons not to do so here.  Chief among them is that South Hazel has been given numerous and specific opportunities to establish subject matter jurisdiction.  It could have done so in its Complaint or Amended Complaint.  It could have done so in its Summary Judgment filings.  After Summary Judgment briefing closed, the Court specifically invited supplemental filings on subject matter jurisdiction and gave South Hazel the opportunity to supplement the record with an expert affidavit and opinion, as well as with a legal brief.  Then, after JHA highlighted a potential deficiency in South Hazel's expert's affidavit and opinion, South Hazel had another shot when it submitted a second affidavit from the same expert on the subject matter jurisdiction question.  In short, South Hazel has been given repeated, pointed opportunities to show there is subject matter jurisdiction.  If South Hazel could have, South Hazel should have.  It would be unfair to JHA and

prejudicial to the efficient administration of justice to provide South Hazel yet another bite at the apple.  *See Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) (plaintiffs do not have an "absolute or automatic right to amend" a complaint); *Beeck v. Aquaslide "N" Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977) (the court must consider the possible prejudice to the opposing party when deciding whether to grant leave to amend).  Additionally, the Court notes that South Hazel can still obtain a merits determination of this case in state court, if and when South Hazel can show ripeness.

    IT IS THEREFORE ORDERED that:

    1.    Plaintiff 6810 South Hazel Street's Motion for Summary Judgment (Doc. 8) is DENIED without prejudice.

    2.    Defendant Jefferson Hospital Association's Motion for Summary Judgment (Doc. 19) is GRANTED IN PART, and this case is dismissed without prejudice for want of subject matter jurisdiction and ripeness.

    3.    Defendant Jefferson Hospital Association's Motion to Strike (Doc. 35) is MOOT.

    DATED this 30th day of November 2020.

                                                            LEE P. RUDOFSKY
                                                            UNITED STATES DISTRICT COURT